This mandamus proceeding arises out of a lawsuit involving a dispute over a construction contract and directly involves an arbitration agreement. From an order enjoining arbitration, petitioner seeks a writ of mandamus requiring the Jefferson County Circuit Court to reverse its order and stay circuit court proceedings pending arbitration. The writ is hereby granted.
Petitioners are Costa and Head Land Co., Ltd., Costa and Head (Birmingham One), Ltd., Costa and Head (Atrium), Ltd., Pedro C. Costa, Nelson Head, and Beverly Head. Costa and Head (Atrium), Ltd., is the owner and developer of a Birmingham office development called "The Atrium." Costa and Head (Birmingham One), Ltd., and Costa and Head Land Co., Ltd., are general partners of Costa and Head (Atrium), Ltd. Pedro C. Costa and Nelson Head are partners of all three limited partnerships listed above, and Beverly Head is a general partner of Costa and Head Land Co., Ltd. In addition, Costa is the project architect.
Respondents are Duncan, Inc., general contractor for the Atrium project; John B. Pike Son, Inc., the parent company of Duncan, Inc., and a guarantor of Duncan, Inc.'s performance; and Reliance Insurance Company, a surety of Duncan, Inc.'s, performance.
On June 26, 1984, Costa and Head (Atrium), Ltd., as owner, and Duncan, Inc., as general contractor, executed a standard American Institute of Architects construction contract and a handwritten addendum thereto. Article Seven, Section 9.1, of the standard contract provides that "All claims, disputes and other matters in question between the contractor and the owner arising out of, or relating to, the contract documents or the breach thereof . . . shall be decided by arbitration."
Disputes arose between Costa and Head (Atrium), Ltd. (hereinafter referred to as "Costa and Head"), and Duncan during the course of construction relating to construction plans and specifications, workmanship, payment to subcontractors, and other matters.
On April 9, 1985, Costa and Head notified Duncan that it would exercise its contractual right to terminate Duncan and hold Duncan liable for the costs of completing the construction unless certain alleged defaults and breaches under the contract were corrected by April 17, 1985.
On April 10, 1985, Costa and Head filed a complaint in circuit court, seeking to gain access to project records of "The Atrium" that were in Duncan's control.
On April 12, 1985, Duncan sued petitioners in circuit court for $5,500,000.00, alleging breach of the construction contract, fraud, negligence, and wrongful termination. (CV 85-2180).
On April 18, 1985, Costa and Head terminated Duncan and filed suit against Duncan in circuit court for $1,000,000.00, alleging breach of contract and fraud. (CV 85-2329). In Count Five of its complaint, Costa and Head requested a court order requiring that all parties submit to arbitration and staying circuit court proceedings in this suit and Duncan's suit pending arbitration of all arbitrable issues. Costa and Head expressly stated in its complaint that by filing suit it did not waive its right to arbitrate all arbitrable issues. *Page 1274 
On April 18 or 19, Costa and Head filed a demand with the American Arbitration Association, requesting arbitration of all claims. Duncan declined to submit to arbitration. Costa and Head refiled its demand on April 29, 1985.
Between March 6, 1985, and November 18, 1985, 29 subcontractors and materialmen filed suit for amounts owing and due for materials or work performed on the Atrium project. Each suit named some or all of the petitioners and respondents as defendants. Various cross-claims and third-party complaints were filed in these actions.
On May 23, 1985, all petitioners moved the trial judge to stay cases CV 85-2180 and CV 85-2329 pending arbitration and to compel arbitration of all arbitrable issues. The trial judge denied petitioners' motion to stay the circuit court proceedings pending arbitration and enjoined the pending arbitration proceedings on September 27, 1985. In a pertinent portion of his order, the trial judge stated:
 There is no dispute between Costa and Head, Ltd., as partners, and Duncan, Inc., as builder, that they are subject to a provision in the contract entered into between them, which calls for arbitration in the event of disputes. There is some dispute as to whether other named parties are subject to arbitration. Duncan, Inc., makes much of the fact that Costa, in addition to being an owner, is also the architect for this project, and questions whether or not in that capacity, he is subject to binding arbitration. . . . The court finds itself concerned as to the ability of arbitrators to adjudicate the amount of the various suppliers' and subcontractors' claims so as to bind these materialmen and subs and to preclude them from proceeding with the various civil actions which are currently pending and others which are conceivably to be filed in this court. The court envisions the possibility of arbitrators reaching a decision as to amounts owing to these subs and/or materialmen and the responsibility for payment as between the principals in this litigation, with the possibility remaining that the affected subs and materialmen might wish to proceed with the civil litigation with a substantially different result possible other than that reached by the arbitrators. This concern causes the court to deny Costa and Head (Atrium), Ltd., a limited partnership's, motion. . ..
Costa and Head argue that the arbitration agreement at issue is governed by the Federal Arbitration Act, 9 U.S.C. § 1 etseq., and that pursuant to Section 3 of the Act, the trial court has no discretion to stay arbitration on the grounds stated in its order.[1] Duncan contends that its contract with Costa and Head is not subject to the Act because the contract does not evidence a transaction involving commerce. Furthermore, Duncan argues that both the threat of inconsistent results due to a lack of necessary parties in the arbitration proceedings and the existence of non-arbitrable issues are sufficient grounds for the trial court's order. Finally, Duncan asserts several grounds which it contends makes the arbitration clause between the parties non-binding. *Page 1275 
We must first determine whether the Federal Arbitration Act applies to this case. We note that the application of the FAA in this case is controlled by principles of "substantive federal law." E.C. Ernst, Inc. v. Manhattan Const. Co.,551 F.2d 1026, 1040 (5th Cir. 1977). For the FAA to be applicable, there must be (1) an agreement in writing calling for arbitration and (2) a transaction involving interstate commerce evidenced by the written agreement. Bernhardt v. PolygraphicCo., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); AmericanHome Assurance Co. v. Vecco Concrete Construction Co.,629 F.2d 961 (4th Cir. 1980). We are of the opinion that both of these requirements have been met in the instant case; the record evidences a written agreement providing for arbitration and that agreement reflects a transaction involving interstate commerce.[2]
The requirement of the FAA that an arbitration agreement "involve commerce" has been construed very broadly so that the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA. See Snyder v.Smith, 736 F.2d 409 (7th Cir. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 513, 83 L.Ed.2d 403 (1985). In our case, the transaction involves the construction of a building located in Alabama. Costa and Head is a limited partnership partially composed of limited partners from states other than Alabama. Duncan's principal place of business is Knoxville, Tennessee, and Duncan's parent company, John B. Pike Son, Inc., is a New York corporation with its primary place of business in Rochester, New York. In addition, some of the subcontractors and others hired to perform work on the project either reside, or were incorporated, in states other than Alabama. Finally, materials incorporated into the project were manufactured in states other than Alabama and transported into this state. This is sufficient evidence of the involvement of interstate commerce to bring the construction contract within the FAA.
Having held the FAA applicable to the case at hand, we now decide whether the trial court has discretion to stay arbitration proceedings because of concerns that arbitration may lead to inconsistent results due to the absence of parties involved in litigation. The recent holding of the United States Supreme Court in Dean Witter Reynolds Inc. v. Byrd, 470 U.S. ___, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), compels us to decide this issue in the negative. In Byrd, the Supreme Court opined:
 [T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.
 The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3-4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.
470 U.S. at ___, 105 S.Ct. at 1241, 84 L.Ed.2d at 163. (Emphasis in original.) The Court went on to state:
 The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, *Page 1276 
even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.
Id., 470 U.S. at ___, 105 S.Ct. at 1242-43, 84 L.Ed.2d at 165.
The Byrd decision solidifies prior holdings of the various inferior federal courts in which it has been decided that the trial court has no discretion to stay arbitration on the grounds of judicial economy, possible inconsistent results, or the existence of non-arbitrable claims. See, e.g., Pierson v.Dean, Witter, Reynolds, Inc., 742 F.2d 334 (7th Cir. 1984);American Home Assurance Co. v. Vecco Concrete Construction Co.,supra; In re Mercury Construction Corp., 656 F.2d 933 (4th Cir. 1981), affirmed, Moses H. Cone Memorial Hospital v. MercuryConstruction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765
(1983); General Guaranty Insurance Co. v. New Orleans GeneralAgency, Inc., 427 F.2d 924 (5th Cir. 1970); Shulman InvestmentCo. v. Olin Corp., 458 F. Supp. 186 (S.D.N.Y. 1978). It has been held that state courts are obligated to grant stays of litigation under § 3 of the FAA just as are the federal courts.Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,supra; see also this Court's opinion in Ex parte Alabama OxygenCo., 452 So.2d 860 (Ala. 1984), approving the views expressed in Justice Maddox's dissent opinion in the original proceeding at 433 So.2d 1158.
Duncan also argues that its demand for punitive damages and its allegation of fraud in the pending civil litigation cannot be submitted to arbitration and, therefore, that arbitration should not be mandated. As previously discussed, the existence of some non-arbitrable claims does not preclude the arbitration of arbitrable issues. Moreover, there is authority that supports the submission of both fraud and punitive damages claims to arbitration if the arbitration agreement is broad enough to allow it. See Willoughby Roofing Supply Co. v.Kajima International, Inc., 598 F. Supp. 353 (N.D.Ala. 1984) (punitive damages may be awarded in arbitration); Pierson v.Dean, Witter, Reynolds, Inc., supra (fraud claims arbitrable).
In light of the foregoing authority, we hold that the trial court was without discretion to stay arbitration on the grounds stated in its order.
Duncan contends that Costa and Head has waived any right to arbitration because of its delay in asserting its claim for arbitration, its use of the judicial process to seek relief, and other actions that Duncan argues are inconsistent with Costa and Head's demand for arbitration. Speaking to the issue of waiver, the court in In re Mercury Construction Corp.,supra, observed:
 Section 3, it is true, would deny the right to a stay of proceedings in favor of arbitration if it can be said that the applicant for the stay is "in default in proceeding with such arbitration." It is often likened to waiver or laches or estoppel, but these terms are used not in their traditional sense but are to be given a definition and application in line with the statutory purposes and preferences reflected in the Act. But "default" in this sense is not to be lightly inferred in view of the statutory favor for arbitration. Thus, mere "delay in making an arbitration demand is not a default within the meaning of Section 3." Halcon International, Inc. v. Monsanto Australia, Ltd., 446 F.2d 156, 161 (7th Cir. 1971); it is only when this delay results in actual prejudice that it may amount to "default" within the Act. Baston Y. F.M. Gr., Inc. v. Saurer-Allma, 311 F. Supp. 68, 72 (D.S.C. 1970).
656 F.2d at 939. The In re Mercury court went on to state that a waiver equivalent to default and subject to determination by the court occurs "when a party `actively participates in a lawsuit or takes other action inconsistent with' the right to arbitration." Id., (quoting N D Fashions, Inc. v. DHJIndustries, Inc., 548 F.2d 722, 728 (8th Cir. 1976). This is the gist of Duncan's waiver claim in the instant case. However, the federal courts have held that it is not *Page 1277 
necessarily the inconsistency of a party's actions that decides the issue of waiver, but, rather, the presence or absence of prejudice to the other party resulting from those actions. ReidBurton Construction, Inc. v. Carpenters District Council,614 F.2d 698 (10th Cir. 1980); E.C. Ernst, Inc. v. ManhattanConstruction Co. of Texas, 551 F.2d 1026, reh'g granted,559 F.2d 268 (5th Cir. 1977); Gavlik Construction Co. v. H.F.Campbell Co., 526 F.2d 777 (3d Cir. 1975); Garcich v. RederiA/B Nordie, 389 F.2d 692 (2d Cir. 1968). The joining of issue on the merits, assertion of a counterclaim or cross-claim, or engaging in discovery, alone, is not sufficient to create a waiver. Demsey Associates, Inc. v. S.S. Sea Star,461 F.2d 1009 (2d Cir. 1972); Gavlik Construction Co. v. H.F. CampbellCo., supra. As noted in Gavlik, "[r]ecent cases have only found waiver where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." 526 F.2d at 783.
We are of the opinion that Costa and Head's actions in the case at bar were not so inconsistent with its right to arbitration, or so prejudicial to Duncan, so as to constitute waiver. Nevertheless, we will discuss the five grounds asserted by Duncan for its position that Costa and Head has waived its right to arbitration:
(1) Although construction disputes existed prior to the filing of Duncan's action, Costa and Head (Atrium), Ltd., did not request arbitration until after Duncan filed suit;
(2) Costa and Head filed a cross-claim against Duncan on May 9, 1985, in a suit (the Russo suit) filed by a subcontractor against Duncan and Costa and Head on March 6, 1985, and did not move to stay those proceedings at that time;
(3) Costa and Head filed a complaint in equity against Duncan on April 11, 1985, seeking possession of project records;
(4) Costa and Head failed to move to stay proceedings in various actions filed by subcontractors against it and Duncan in which Duncan had filed cross-claims or third-party complaints against Costa and Head;
(5) Duncan says that Costa and Head terminated the construction contract when it removed Duncan as contractor, and, therefore, that the obligation to arbitrate no longer existed.
We are not persuaded that, singularly or collectively, these factors constitute waiver.
Although disputes arising early during construction could have been submitted to arbitration, neither party submitted them. The duty of petitioners either to request arbitration or waive that right did not become critical until actual litigation was pending in the circuit court. We find no requirement that petitioners request arbitration prior to Duncan's filing suit, and we conclude that petitioners' failure to do so does not give rise to waiver.
The filing of a cross-claim and a third-party complaint by Costa and Head in the Russo suit does not constitute waiver. The cross-claim filed by Costa and Head on May 9, 1985, did not address the merits of the Russo suit, but merely sought judgment against Duncan on its labor and material bond in the event that a judgment was rendered against it in the Russo suit. Furthermore, Costa and Head had filed its action against Duncan on April 18, 1985, and had requested that its suit, as well as the original action filed by Duncan on April 12, 1985, be stayed pending arbitration. About this same time, Costa and Head filed its demand for arbitration. Thus, Costa and Head's response in the Russo suit was made after the requests for a stay and arbitration were made. Additionally, after Duncan filed its own cross-claim against Costa and Head in the Russo suit on June 6, 1985, seeking damages from petitioner on the same grounds as those asserted in Duncan's April 12 complaint against Costa and Head, Costa and Head did, on July 23, 1985, move for a stay of the Russo suit. *Page 1278 
Although Costa and Head filed a complaint and application for a temporary restraining order against Duncan on April 10, 1985, to obtain possession of construction documents and drawings that it alleged it needed to complete construction of the project in the event Duncan was terminated, we do not find this action to be inconsistent with a desire to arbitrate. Moreover, the complaint was dismissed the day after it was filed, without the temporary restraining order having been issued, and, therefore, Duncan was in no way prejudiced.
We also find no support in Duncan's contention that Costa and Head's failure to file motions to stay the numerous subcontractor suits filed against both Duncan and Costa and Head in which Duncan had subsequently filed cross-claims or third-party complaints against Costa and Head constitutes a waiver. All subcontractor suits, with the exception of the Russo suit and one other, were filed after petitioner had moved for a stay in the April 12 suit and had requested arbitration.
Regardless of whether Costa and Head's termination of Duncan as contractor was also a termination of the construction agreement, the right to arbitration of disputes arising during the term of the agreement would continue beyond the contract's termination. Coudert v. Paine Webber Jackson Curtis,705 F.2d 78 (2d Cir. 1983).
Duncan also asserts that the construction contract mandating arbitration is void for lack of mutuality and that a novation occurred which discharged the original duties hereunder. Our reading of the record does not reveal that these issues were presented to the trial court and they are, therefore, not before this Court.
WRIT GRANTED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, and BEATTY, JJ., concur.
[1] 9 U.S.C. § 2 provides:
 A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 3 provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
[2] For this Court's acknowledgement that the Federal Arbitration Act applies to cases brought in the courts of this state, seeEx parte Alabama Oxygen Co., 452 So.2d 860 (Ala. 1984), approving the views expressed in Justice Maddox's dissent in the original proceeding at 433 So.2d 1158.