548 So.2d 157 (1989)
Ex Parte Jack D. WARREN and Juanita Warren.
(In re Jack D. WARREN and Juanita Warren v. JIM SKINNER FORD, INC., a Corporation, et al.)
87-1179.
Supreme Court of Alabama.
July 7, 1989.
*158 William J. Trussell of Church, Trussell & Robinson, Pell City, for petitioners.
John Martin Galese of Galese & Moore, Birmingham, for respondents H.E. Holladay, Circuit Judge, and Jim Skinner Ford, Inc.
Walter J. Sears III and Sid J. Trant of Bradley, Arant, Rose & White, Birmingham, for respondent Ford Motor Co.
Stephen A. Rowe of Lange, Simpson, Robinson & Somerville, Birmingham, for respondent First Alabama Bank of Birmingham.
PER CURIAM.
Jack D. Warren and Juanita Warren petitioned this Court for a writ of mandamus directed to the Honorable H.E. Holladay of the Circuit Court for St. Clair County, Alabama. The writ is due to be granted.
On May 27, 1987, the Warrens, residents of St. Clair County, purchased a vehicle from Jim Skinner Ford, Inc. ("Jim Skinner"), a corporation organized in the State of Delaware and having its sole place of business in Jefferson County, Alabama. The sale of the vehicle was solicited, transacted, and executed wholly within the State of Alabama. The sales contract contained an arbitration clause, which is set out here verbatim:
"F. The undersigned purchaser and Jim Skinner Ford Inc. further agree as follows
"1. That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has an impact upon interstate commerce.
"2. That in the event any dispute(s) under the terms of this contract of sale arise (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold, to the contract, the representations, promises, undertakings or covenants made by Jim Skinner Ford, Inc., in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle, any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreements), that Jim Skinner Ford Inc. and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 USC § 1, et seq. and according to the commercial rules of the American Arbitration *159 Association then existing in Birmingham, Alabama."
After the sale, the Warrens experienced numerous problems with the vehicle and they filed a breach of contract and warranties action pursuant to state law and the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-12, in St. Clair Circuit Court, naming Jim Skinner, Ford Motor Company ("Ford"), and First Alabama Bank of Birmingham as defendants. Jim Skinner filed a motion to stay the action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 through 4 (the "FAA"), which the trial court granted. The Warrens then filed a motion to alter or amend the court's order. Oral argument was heard on this motion on February 11, 1988, after which Ford filed a motion to stay the proceedings pending arbitration. The trial court on June 29, 1988, denied the Warrens' motion to alter or amend and affirmed its previous order staying the action pending arbitration. The Warrens, on July 5, 1988, filed their petition with this Court for a writ of mandamus.
During the February 11, 1988, hearing, the following facts were stipulated by the parties:
"1. The Warrens are residents of St. Clair County, Alabama.
"2. Jim Skinner is a Delaware Corporation with its sole and principal place of business in the State of Alabama.
"3. The sale of the vehicle which is the subject of this action occurred within the State of Alabama.
"4. The vehicle which is the subject of this action was previously owned by Jim Skinner and [was] sold to the Warrens pursuant to a contract entered into and executed in the State of Alabama.
"5. All obligations anticipated from the sales contract were to be performed solely within the State of Alabama."
The threshold inquiry in the present case is whether the sale of a motor vehicle manufactured outside of Alabama to an Alabama resident, who is buying it as a consumer and not for commercial purposes, is a contract involving "interstate commerce," as that term is used in the Federal Arbitration Act, where the seller has its only place of business in Alabama, the vehicle is delivered to the buyer in Alabama, and all obligations arising out of the contract of sale are to be performed in Alabama.
Alabama employs a two-pronged test to determine whether the FAA applies to a transaction within the state. This standard was announced by Justice Maddox's dissenting opinion in Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983), and was later adopted by this Court at 452 So.2d 860 (Ala.1984). That standard is that the FAA applies to a contract if: 1) the contract was one involving interstate commerce; and 2) the contract contained an arbitration agreement voluntarily entered into by the parties.
It is undisputed that there was an arbitration clause in the contract involved in this case; therefore, the only question is whether the contract was one involving interstate commerce. In discussing the commerce requirement of the FAA, this Court has stated:
"The requirement of the FAA that an arbitration agreement `involve commerce' has been construed very broadly so that the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA."
Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272, 1275 (Ala.1986).
Although we note that the language quoted from Ex parte Costa & Head is very broad, we find, nonetheless, that, under the particular facts of this case, the transaction in question does not involve interstate commerce, as contemplated by the FAA; and, therefore, we hold that the provisions of the federal legislation are not controlling.
We hold that the appropriate standard for making this determination is set forth in a special opinion in Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir.1961), cert. denied *160 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961):
"[W]hether at the time [the parties] entered into [the contract] and accepted the arbitration clause, they contemplated substantial interstate activity."
287 F.2d at 387 (Lumbard, Chief Judge, concurring) (emphasis original). See, also, Burke County Public Schools Board of Education v. Shaver, 303 N.C. 408, 279 S.E.2d 816, 822 (1981) (applying the Metro Industrial test).
Therefore, the standard here applicable is not the "regulating standard" of "affecting interstate commerce"; rather the test for determining whether the transaction involves interstate commerce is a distinct standard unique to the application of the FAA. See Burke, supra, 279 S.E.2d at 822 (footnote 11).
Applying the FAA standard to the facts of this case, we perforce must conclude that the parties did not contemplate substantial interstate activity. Indeed, the stipulation of fact precludes, beyond any doubt, a finding that any interstate commercial activity would arise from the retail sale of the automobile.
Having determined that the FAA does not apply in the present case, we must next look to state law to determine what effect should be given to the contractual provision calling for arbitration. The enforcement of predispute arbitration agreements, while approved in the federal court system (see Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)), is specifically prohibited by Ala.Code 1975, § 8-1-41(3). This federal policy does not preempt the differing Alabama policy in the present case, because an issue of purely state law is in question. See International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); see, also, Riverfront Properties, Ltd. v. Max Factor III, 460 So.2d 948, 953 (Fla.1984).
In discussing the policy behind Alabama's nonenforcement of predispute arbitration clauses, this Court has stated:
"The public policy of this state is to encourage arbitration and amicable settlements of differences between parties; but public policy also holds void an agreement in advance to oust or defeat the jurisdiction of all courts, as to all differences between the parties."
Wells v. Mobile County Bd. of Realtors, 387 So.2d 140, 144 (Ala.1980).
The contract in the present case served to transfer title to an automobile, already located in Alabama, to a resident consumer. Even using the broad interstate commerce standard found in Ex parte Costa & Head, we must conclude that such a transaction does not have a sufficient nexus with interstate commerce activity to bring the contract within the coverage of the FAA. Thus, we hold that, under the narrow factual context of this case, there is no basis for invoking the FAA, and the arbitration clause contained in the contract cannot be enforced under Alabama law. The writ of mandamus, therefore, is due to be granted.
WRIT OF MANDAMUS GRANTED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting).
The majority finds that "under the particular facts of this case, the transaction in question does not involve interstate commerce, as contemplated by the FAA; and, therefore, the provisions of the federal legislation are not controlling." In my opinion, the question is not whether "interstate commerce" was involvedclearly it was, and the parties so stated in the sales agreement;[1] the real question is whether Congress intended to preempt the field where *161 the contract containing an agreement to arbitrate is one involving the retail sale of an automobile. The majority is of the opinion that Congress did not intend to cover such a contract. I cannot come to that conclusion, because I cannot make a distinction between a contract to buy stock[2] and a contract to buy an automobile, and I find myself having to dissent once again, as I did in Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983), vacated by York Int'l v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). In short, I believe that this transaction sufficiently involves interstate commerce so as to be controlled by the Federal Arbitration Act; therefore, I must respectfully dissent, as I have before.
The issue addressed in this case is whether the sale of a motor vehicle by a Delaware corporation from its sole place of business, which is in the State of Alabama, to consumer/residents of Alabama is a transaction controlled by the FAA.
Alabama employs a two-pronged test to determine whether the Act applies to transactions within the state. This standard was announced in my dissent in Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983), and later adopted by the Court at 452 So.2d 860 (Ala.1984), after, of course, the Supreme Court of the United States had vacated our judgment and remanded the cause to this Court for further consideration in light of Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). That standard is:
1. That the contract was one involving interstate commerce; and
2. That the contract contained an arbitration agreement voluntarily entered into by the parties.
The Warrens first argue that the appropriate standard for determining what constitutes a "transaction involving interstate commerce" as contemplated in the Act is whether the contract is one in which substantial interstate activity was contemplated by the parties as they entered into the contract that included the arbitration clause. They cite in support of this contention the following cases: Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir.1961), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); Burke County Public Schools Bd. of Ed. v. Shaver Partnership, 303 N.C. 408, 279 S.E.2d 816, 822 (1981); Ex parte Alabama Oxygen Co., supra, at 1175.
The Warrens argue that substantial interstate activity was clearly not contemplated, because:
1. The contract was solicited and executed in the State of Alabama.
2. The vehicle was not shipped to Alabama from another state as part of the contract of sale, and all activity in the performance of the sales contract was anticipated to be performed in Alabama.
The Warrens concede that Jim Skinner acquired the vehicle from out-of-state, but argue that the contract contemplated a sale of a vehicle located on the lot.
Conversely, Jim Skinner urges the application of the test announced in Ex parte Costa & Head (Atrium) Ltd., 486 So.2d 1272 (Ala.1986), which is:
"The requirement of the FAA that an arbitration agreement `involve commerce' has been construed very broadly so that the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA."
486 So.2d at 1275.
Jim Skinner cites Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp., 797 F.2d 238 (5th Cir.1986), in support of the trial court's order. In Mesa Operating, the court held that citizens of different states engaged in the performance of contractual operations in one of those states are engaged in a contract under the Act. Jim Skinner points out that the United States Congress has enacted laws that regulate the effects of the manufacture, distribution, financing, warranty, and sale of motor vehicles in interstate commerce, and it directs our attention to *162 the following: the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1901 et seq.; the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.; the Automobile Dealers Suits Against Manufacturers Act, 15 U.S.C. § 1221 et seq.; the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 et seq.; and the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.
The petitioners attempt to distinguish Ex parte Costa & Head (Atrium) Ltd. from the facts of the present case. They argue that in Costa & Head, 1) there existed a limited partnership with partners from several states; 2) one party to the contract had an out-of-state principal place of business and was obligated under the contract to perform work in this state; 3) out-of-state workmen were employed to perform the contract; 4) materials incorporated into the project in this state were manufactured and transported into this state from out-of-state as part of the actual performance of the contract. Also, in Costa & Head, petitioners contend, the transactions were all of a commercial nature between businessmen of equal bargaining strength, whereas in this case, petitioners argue, the purchasers are ordinary consumers contracting with a large corporation to purchase a consumer good for family use. I am not persuaded that Congress intended the application of the provisions of the Act to be determined on a case by case basis because of the bargaining power of the parties.
In Costa & Head, this Court held that the Act will be applied in regard to any agreement that has the "slightest nexus" with interstate commerce. Applying this standard, it is inconceivable to me that this particular contract did not meet that test. In fact, the parties expressly stated that it did in the contract itself. Unquestionably, the subject vehicle was not manufactured in Alabama, but was manufactured outside the state and shipped into the state for sale within the state.
I agree with Jim Skinner's assertion that motor vehicles have an inherent effect on interstate commerce, as exemplified by the great volume of federal legislation regarding motor vehicles. I am not persuaded by the Warrens' argument that all of the parties are residents of the State of Alabama and that that is the controlling factor. In the recent decision of Ex parte McKinney, 515 So.2d 693 (Ala.1987), this Court held that Alabama resident citizens who purchased annuities from an Alabama stock brokerage firm and pursuant to that transaction signed agreements containing arbitration clauses were bound by those arbitration clauses.
I think the trial court ruled correctly. The Warrens present no evidence that they were fraudulently induced to enter into this agreement to arbitrate, nor is there any evidence that they were coerced or that they were ignorant of the provisions of the contract upon entering into it. In short, there is substantial evidence to support the judgment of the trial court that this arbitration agreement was voluntarily entered into. The majority is of the opinion that the public policy and statutory law of this state, which refuse to enforce pre-dispute agreements to arbitrate, should prevail. If there were no conflicting provisions of federal law, state policy and statutory law in this respect would have to be honored. In this case, the majority bottoms its decision upon a finding that this contract does not involve "interstate commerce." The decision cannot rest on this premise.[3] The automobile industry is one of the most highly regulated industries in the country. I believe Congress intended to make contracts for the retail sale of automobiles containing arbitration clauses subject to the provisions of the Act, and, there being no evidence to show that the agreement was not voluntarily entered into, I would not find it contrary to the public policy or statutory law of this state.
This Court, in Ex parte Warrior Basin Gas Co., 512 So.2d 1364 (Ala.1987), quoted *163 from Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343 (11th Cir.1982), the statement that "[a] determination by a trial court of what was intended by the parties in their agreement is a question of fact, not to be disturbed by this court unless clearly erroneous."
I am of the opinion that Judge Holladay's findings of fact are not clearly erroneous and that he has correctly applied federal law as it relates to the subject contract. I would deny the writ of mandamus.
NOTES
[1] The sales agreement for the automobile itself states:

"F. The undersigned purchaser and Jim Skinner Ford Inc. further agree as follows
"1. That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has an impact upon interstate commerce."
[2] Arbitration clauses contained in contracts involving stock purchases are enforceable. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).
[3] Logically extended, the result of this holding, that the retail sale of an automobile by a dealer who is a resident of this state to a resident of this state does not involve interstate commerce, would mean that the myriad of cases authorizing Alabama residents to sue out-of-state manufacturers and hale them into Alabama courts may need to be reexamined.