628 So.2d 316 (1993)
Ex parte Bruce M. JONES.
(Re Bruce M. JONES
v.
Charles S. CALDWELL III and Automatic Detection Systems, Inc.)
1920249.
Supreme Court of Alabama.
July 16, 1993.
*317 C. Lee Reeves of Sirote & Permutt, P.C., Birmingham, for petitioner.
George G. Lynn and Thomas W. Thagard III of Maynard, Cooper, Frierson & Gale, P.C., Birmingham, for respondents.
KENNEDY, Justice.
This mandamus proceeding stems from a lawsuit involving a dispute over a stock purchase agreement between the plaintiff/petitioner, Bruce M. Jones, and the defendant/respondent Charles S. Caldwell III. Jones seeks a writ of mandamus requiring the Jefferson County Circuit Court to set aside its order directing arbitration as to some of Jones's claims. We grant the writ.
Caldwell is the majority shareholder and president of Automatic Detection Systems, Inc. ("ADS"). ADS is an Alabama corporation that sells, installs, maintains, and monitors security system equipment. ADS is also a defendant in the underlying action.
Jones owned all of the stock in another Alabama corporation, Birmingham Protection Systems, Inc. ("BPS"). In November 1990, Caldwell, individually, entered into a stock purchase agreement with Jones. Under the agreement, Jones, as the sole stockholder of BPS, was to sell Caldwell his BPS stock. This agreement contained an arbitration provision requiring that disputes regarding the stock agreement be arbitrated. Later, such disputes arose and Jones sued.[1]
The trial court ordered arbitration. At issue in this mandamus proceeding is whether the stock purchase agreement "involves interstate commerce," and thus, invokes the Federal Arbitration Act, which would render the arbitration provision in the contract enforceable.
Predispute arbitration agreements are unenforceable under Alabama law. Ala. Code 1975, § 8-1-41. If, however, an arbitration agreement was voluntarily entered into, and relates to a contract involving interstate commerce, the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") applies, and preempts Alabama law. See Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983) (Maddox, J., dissenting), review after remand from United Supreme Court, 452 So.2d 860 (Ala.1984) (adopting views expressed in Justice Maddox's original dissent); A.G. Edwards & Sons, Inc. v. Syvrud, 597 So.2d 197 (Ala.1992). Under the FAA, a predispute arbitration agreementin the context of a contract involving interstate commerceis enforceable. Id.
At the outset, we note that ADS was not a party to the stock purchase agreement. Thus, ADS has no standing to seek enforcement of the arbitration provision therein, and it would be error for the trial court to compel arbitration of claims against ADS, under this arbitration provision. We do not necessarily read the trial court's order to so require, but we address this question nonetheless, because the parties suggest that they so read the trial court's order.
We turn to the dispositive issue before us, whether the agreement between Caldwell and Jones involved "interstate commerce." In this regard, Caldwell, citing Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272, 1275 (Ala.1986), argues that even the "slightest nexus" of an agreement with interstate commerce will bring the agreement within the scope of the FAA. See Ex parte Brice Building Co., 607 So.2d 132 (Ala. 1992). Caldwell discusses, in this regard, ADS and BPS's interstate connections outside the agreement. Caldwell concedes that the stock purchase agreement between himself and Jones makes no reference to any interstate matters. However, for the FAA to apply, the agreement that contains the predispute arbitration provision must involve interstate commerce.
Our review of the record indicates that the agreement relates to the sale of all the stock in an Alabama corporation (located solely within Alabama), between two Alabama businessmen, negotiating within Alabama to create an agreement consisting of duties and obligations to be performed within *318 Alabama. Based on these facts, we hold that the FAA does not apply.
Although one could reasonably conclude that the agreement had not even the "slightest nexus" with interstate commerce, we reach our holding by applying the standard set out in Ex parte Warren, 548 So.2d 157 (Ala.1989), for determining whether a contract involves interstate commerce, rather than the Costa "slightest nexus" standard. The Warren standard is "[W]hether at the time, [the parties] entered into [the contract] and accepted the arbitration clause, they contemplated substantial interstate activity." 548 So.2d at 160 (quoting Metro Industrial Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 387 (2d Cir.1961) (emphasis in Metro), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961).
In Warren the Court declined to apply the Costa "slightest nexus" standard and implicitly overruled it in a "narrow" set of circumstances. Warren, 548 So.2d at 160. Warren, which involved a retail automobile sales contract, had a very limited applicability, as was indicated by the Warren opinion itself and as subsequent cases suggested. Noting this, we observed in Ex parte Brice Bldg. Co., 607 So.2d 132 (Ala.1992):
"The Warren case was expressly addressed by this Court with regard to its `narrow factual context.' ...
"In H.L. Fuller Constr. Co. v. Industrial Dev. Bd. of [the] Town of Vincent, 590 So.2d 218 (Ala.1991), decided after Warren, we restated the Costa standard. H.L. Fuller Constr. involved a construction contract.... We restated the Costa standard, but did not go on to apply it....
"In Roscoe v. Jones, 571 So.2d 1043 (Ala. 1990), another construction contract case, we reemphasized that Warren has a `narrow application.' Id. at 1046."
607 So.2d at 134. (Emphasis original.)
To resolve any inconsistency or confusion generated by the existence of two different standards, and determining, as we now do, that Warren represents a more reasoned approach than the Costa standard, we overrule any case inconsistent with Warren, to the extent that it states a different standard for determining the involvement of interstate commerce.
In this case, because the FAA does not apply, Alabama law renders the arbitration provision unenforceable. Ala.Code 1975, § 8-1-41; Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140 (Ala.1980).
WRIT GRANTED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
MADDOX and INGRAM, JJ., dissent.
MADDOX, Justice (dissenting).
I respectfully dissent. I disagree with the majority as to the applicable test for determining whether a transaction involves interstate commerce for purposes of the FAA. I also believe that the stock purchase agreement containing an arbitration clause involves interstate commerce and, therefore, that the trial court properly granted the motion to compel arbitration.

I.
In determining whether a transaction involves interstate commerce, I believe that the "slightest nexus" test set forth in Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), and not the "contemplation" test set forth in Ex parte Warren, 548 So.2d 157 (Ala.), cert. denied sub nom. Jim Skinner Ford, Inc. v. Warren, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989), provides the proper analysis. See Warren, 548 So.2d at 160-63 (Maddox, J., dissenting). Although the majority concludes "that Warren represents a more reasoned approach than the Costa standard," 628 So.2d at 318, the majority also recognizes that Warren "had a very limited applicability, as was indicated by the Warren opinion itself and as subsequent cases suggested." 628 So.2d at 318.
Indeed, Warren's "contemplation" test has been applied in only two contextsthose involving automobile sales contracts between dealers and consumers, see Warren and Ex parte Williams, 555 So.2d 146 (Ala.1989), and those, like this present case, involving stock purchase agreements. See Ex parte Clements, *319 587 So.2d 317 (Ala.1991). That this Court has applied the "contemplation" test sparingly indicates "that Warren has a `narrow application.'" Ex parte Brice Building Co., 607 So.2d 132, 134 (Ala.1992) (quoting in part Roscoe v. Jones, 571 So.2d 1043, 1046 (Ala.1990)). In contrast, in addition to cases involving construction contract disputes, such as Brice Building Co., this Court has also recently applied the "slightest nexus" test in a number of other contexts. See First Real Estate Corp. of Alabama, Inc. v. Brown Marx Tower Ltd., 620 So.2d 648 (Ala.1993) (real estate management agreement); Circle "S" Industries, Inc. v. Berryman, 613 So.2d 329 (Ala.1993) (consent judgment involving agreement not to compete); Garikes, Wilson, & Atkinson, Inc. v. Episcopal Foundation of Jefferson County, Inc., 614 So.2d 447 (Ala. 1993) (contract for architectural services); and A.J. Taft Coal Co. v. Randolph, 602 So.2d 395 (Ala.1992) (mining lease).
Because this Court had already adopted the "slightest nexus" test in Costa & Head, its adoption of the "contemplation" test in Warren has been criticized as "creating a double standard." Stanley D. Bynum & J. David Pugh, Enforcing Arbitration Agreements in Alabama: A Double Standard Dilemma, 54 Ala.Law. 38, 43 (January 1993). Bynum and Pugh wrote that Costa & Head "brought Alabama law generally in line with the majority of other jurisdictions" but that Warren "is inconsistent with all other jurisdictions that have addressed the issue." Id. at 38-39 and 41. The authors particularly criticized Warren's "contemplation" test for its subjectivity. Id. at 43.
I do not think that the United States Supreme Court's denial of the petition for certiorari in Warren should be viewed as that Court's imprimatur of the "contemplation" test, because a denial of a petition for certiorari review has no significance in regard to the merits. Parker v. Ellis, 362 U.S. 574, 576, 80 S.Ct. 909, 911, 4 L.Ed.2d 963 (1960).[2]
Based on the foregoing, I believe that the "slightest nexus" test gives more effect to Congress's intent in enacting the FAA, which was "to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2525-26, 96 L.Ed.2d 426 (1987). I am unwilling to overrule recent, well-reasoned cases applying the test this Court adopted in Costa & Head.

II.
Regarding whether the arbitration agreement in this case is enforceable, I note that "[a]rbitration clauses contained in contracts involving stock purchases are enforceable." Warren, 548 So.2d at 161 n. 2 (Maddox, J., dissenting) (citing Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). I believe that the stock purchase agreement in this case had at least the "slightest nexus" with interstate commerce, so that the arbitration agreement is specifically enforceable pursuant to the FAA. Consequently, I must respectfully dissent.
INGRAM, J., concurs.
NOTES
[1] There are also disputes between the parties as to an "independent consulting agreement" between ADS and Jones, but the issues here relate solely to the trial court's order requiring the arbitration of claims arising under the stock purchase agreement.
[2] For example, last year the United States Supreme Court denied a petition for certiorari review raising the issue of whether the principle of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applies to gender-based peremptory strikes, Murphy v. State, 596 So.2d 42 (Ala.Cr.App.1991), cert. denied, ___ U.S. ___, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992), but in another case that Court has recently granted a certiorari petition raising the same issue. J.E.B. v. State, 606 So.2d 156 (Ala.Civ.App.1992), cert. granted, ___ U.S. ___, 113 S.Ct. 2330, 124 L.Ed.2d 242 (1993).