628 So.2d 361 (1993)
Juliette G. LOPEZ,
v.
HOME BUYERS WARRANTY CORPORATION, et al.
1920330.
Supreme Court of Alabama.
August 20, 1993.
Rehearing Denied September 24, 1993.
*362 Jere L. Beasley and J. Cole Portis of Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, for appellant.
Philip S. Gidiere, Jr. of Carpenter & Gidiere, Montgomery, for appellees.
SHORES, Justice.
Juliette Lopez filed an "appeal" from an order of the Circuit Court of Montgomery County compelling her to arbitrate her claims against Home Buyers Warranty Corporation II ("Home Buyers"). The issue here is whether a claim based on a homeowner's warranty is subject to arbitration under the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15.
Because "a petition for a writ of mandamus is the proper means to test a trial court's granting of a motion to arbitrate," Ex parte Alexander, 558 So.2d 364, 365 (Ala. 1990), we treat Lopez's filing, although it was in the form of an appeal, as a petition for a writ of mandamus requiring the Montgomery Circuit Court to vacate its order compelling arbitration. See A.G. Edwards & Sons, Inc. v. Clarke, 558 So.2d 358, 360 (Ala.1990). We grant the writ.
Mrs. Lopez and her husband purchased a house in Montgomery, Alabama, from Mr. and Mrs. Glen Browder on August 31, 1989. The Browders had listed the house with, and the sale was conducted in part through agents of, Aronov Realty Company, Inc. ("Aronov"). The Lopezes executed the closing documents on the house while they were in Key West, Florida.[1] The house was covered by a Home Buyers warranty against specified defects. This warranty was issued in 1988 from the Home Buyers office in Denver, Colorado, to the Browders, as the original homeowners. Under the terms of the warranty, a Home Buyers representative was to inspect the house during its construction. The warranty coverage transferred to the Lopezes when they bought the house from the Browders.
Mrs. Lopez moved into the house in June 1990; shortly thereafter, she noticed cracks in the floors and noticed other structural defects. Her attorney notified Home Buyers' regional office in Tucker, Georgia, by letter dated March 1, 1991, of her potential claim under her Home Buyers warranty. A representative from Home Buyers' warranty service office in Denver, Colorado, wrote Mrs. Lopez on March 6, 1991, and informed her of the procedure for filing a claim for coverage of structural damage under her warranty. On April 19, 1991, Mrs. Lopez sued Home Buyers for recovery of the costs of structural repairs to her house. She also sued Aronov, alleging fraud in regard to the sale of the house.
*363 Home Buyers moved to dismiss, or, in the alternative, to compel arbitration under the terms of the arbitration clause contained in the warranty. That arbitration clause states, in part:
"Should the Builder or the Homebuyer(s) disagree with the Insurer's decision to deny the claim as recommended by the Service, the contesting party shall call for conciliation with the Service or an arbitration to be conducted by the American Arbitration Association (A.A.A.), or other mutually agreeable arbitration service at the Service's expense.... The voluntary dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty documents or to seek relief for any dispute arising out of this program."
On October 19, 1992, the trial court ordered Mrs. Lopez to submit her claims against Home Buyers to arbitration under the terms of the warranty contract. The claims against Aronov have been stayed pending our ruling on the enforceability of the arbitration clause. Although the trial court's order compelling arbitration purported to "dismiss" Mrs. Lopez's claims against Home Buyers, we understand that "dismissal" to be in reality a stay of the proceedings against Home Buyers pending arbitration.
Under Alabama law, the specific enforcement of a predispute arbitration agreement violates public policy unless federal law preempts state law. See § 8-1-41(3), Ala.Code 1975; Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140, 144 (Ala. 1980); Bozeman v. Gilbert, 1 Ala. 90, 91 (1840). "The FAA applies to a transaction within this state if the contract [1] involves interstate commerce and [2] contains an arbitration clause voluntarily entered into by the parties." A.J. Taft Coal Co. v. Randolph, 602 So.2d 395, 397 (Ala.1992), citing Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala. 1984). To determine whether federal law preempts our public policy against enforcement of predispute agreements to arbitrate, we must examine whether the warranty agreement containing the arbitration provision involves interstate commerce. Ex parte Jones, 628 So.2d 316 (Ala.1993).
Home Buyers argues that the warranty agreement involves interstate commerce, and, because this dispute arose out of the warranty agreement, that the FAA must apply. In so arguing, Home Buyers relies on the "slightest nexus" test of Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala. 1986), wherein the existence of the slightest nexus between an agreement and interstate commerce would bring the agreement within the ambit of the FAA, thus allowing enforcement of a predispute arbitration provision within the agreement. Id. at 1275.
However, we have recently overruled the Costa & Head "slightest nexus" test in favor of the more reasoned approach of the "contemplation" test applied in Ex parte Warren, 548 So.2d 157 (Ala.), cert. denied sub nom. Jim Skinner Ford, Inc. v. Warren, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). Ex parte Jones, supra, 628 So.2d at 318. The Warren test examines whether the parties "contemplated substantial interstate activity" at the time they entered into the contract and accepted the arbitration clause.[2]Ex parte Warren, supra, at 160. Whether the parties contemplated substantial interstate commerce is, of course, to be determined by the facts and circumstances of each case.
The trial court applied the slightest nexus test when it compelled arbitration:
"After hearing oral arguments and after consideration of the briefs and memoranda submitted by the parties, the Court has determined that the facts surrounding the Home Buyers contract do support a finding that the contract has at least [the] slightest nexus with interstate commerce so as to bring the contract under the purview of the FAA. Some of the facts supporting this finding are as follows: Home Buyers is a Colorado corporation and *364 Plaintiff is an Alabama resident; if Plaintiff is not satisfied with the builder's performance, she must send an application to either Georgia or Colorado; the Home Buyers district office for the State of Alabama is in Tucker, Georgia; and the Home Buyers Claims & Warranty Service Office is in Denver, Colorado. As stated previously, the above facts indicate that the Home Buyers contract has at least [the] `slightest nexus' with interstate commerce."
Mrs. Lopez contends that there is insufficient involvement with interstate commerce to require arbitration, because the house was built in Alabama by an Alabama builder for an Alabama resident and was listed for sale through an Alabama real estate agency. Home Buyers points to possible interstate activity by the Lopezes during their purchase and financing of the house, to support its contention that there was sufficient involvement with interstate commerce to require arbitration. "However, for the FAA to apply, the agreement that contains the predispute arbitration provision must involve interstate commerce." Ex parte Jones, supra, 628 So.2d at 317 (emphasis original). That agreement in this case is the Home Buyers warranty, not the contract for purchase of the house. The warranty does not involve "the production of articles to be shipped in interstate commerce," Continental Grain Co., supra, 628 So.2d at 323; nor does it require the use of specific materials made by and shipped from out-of-state manufacturers. Ex parte Brice Bldg. Co., 607 So.2d 132, 134 (Ala.1992); Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1379 (Ala.1992).
Although Home Buyers contends that under the warranty Mrs. Lopez would have to file a claim in either Georgia or Colorado, we have determined that "[t]he mere use of the telephone and mail by persons in different states to communicate about activity that is purely local" is not a sufficient contact with interstate commerce to require application of the FAA. First Real Estate Corp. of Alabama v. Brown Marx Tower Ltd. Partnership, 620 So.2d 648 (Ala.1993).[3] Furthermore, it is the scope of the contract containing the arbitration clause, and not the place of performance, that determines the applicability of the FAA when using the "contemplation" test. Continental Grain Co., supra, citing Circle "S" Industries, Inc. v. Berryman, 613 So.2d 329, 331 (Ala.1993).
In this case, we find no evidence that the parties contemplated substantial interstate activity when they entered into the warranty contract. Therefore, the FAA does not apply. We hold that, under the "contemplation" test, Mrs. Lopez is not required to submit her warranty claims with Home Buyers to arbitration. See Ex parte Alexander, 558 So.2d 364, 366 (Ala.1990). The writ is due to be granted for the foregoing reasons.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
INGRAM, J., concurs in the result.
MADDOX and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting).
I disagree with the majority's use of the "contemplation" test for determining whether the particular transaction involves interstate commerce for purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Furthermore, I disagree with the majority's conclusion that the trial court erred in compelling arbitration of Mrs. Lopez's claims.
The threshold question is whether the FAA applies to this case. If the Act applies, as I believe it does, then the predispute arbitration agreement is enforceable, see 9 U.S.C. § 2, and whether the agreement would otherwise be unenforceable under Alabama law, see Ala.Code 1975, § 8-1-41(3), would be immaterial.
Does the home warranty agreement involve interstate commerce so as to invoke the *365 FAA and thereby render the arbitration agreement enforceable? I believe that it does.
Section 2 of the FAA provides, in pertinent part, that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable." As the United States Supreme Court has held, in enacting this section, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.... Congress has thus mandated the enforcement of arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). The Supreme Court noted in Keating that the FAA "permits `parties to an arbitrable dispute [to move] out of court and into arbitration as quickly and easily as possible," 465 U.S. at 7, 104 S.Ct. at 856 (quoting in part Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983)) (bracketed words added in Keating). The Supreme Court also noted: "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Id.
The United States Supreme Court has also characterized the FAA as "a statute that embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987). The House Judiciary Committee Report on the arbitration bill also reflects Congress's intent. That report states in part: "Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him. An arbitration agreement is placed upon the same footing as other contracts, where it belongs." H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924); see also Ex parte Alabama Oxygen Co., 433 So.2d 1158, 1170 (Ala.1983) (Maddox, J., dissenting). In Alabama Oxygen, after remand from the United States Supreme Court for further consideration in light of Keating, this Court adopted my dissent as its opinion. Ex parte Alabama Oxygen Co., 452 So.2d 860, 861 (Ala.1984); see also Ex parte McKinney, 515 So.2d 693 (Ala.1987).
This Court held in Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), that "[t]he requirement of the FAA that an arbitration agreement `involve interstate commerce' has been construed very broadly so that the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA." 486 So.2d at 1275 (citations omitted). I realize that a majority of this Court rejected this "slightest nexus" test in Ex parte Jones, 628 So.2d 316 (Ala.1993), but I believe that Jones is wrong. See Jones, 628 So.2d at 318 (Maddox, J., dissenting); and Continental Grain Co. v. Beasley, 628 So.2d 319 (Ala.1993) (Maddox, J., concurring in the result).
For the reasons cited by the trial court in that part of its order quoted in the majority opinion, I believe that the home warranty agreement, which was transferred to Mrs. Lopez, meets the "slightest nexus" test and that the trial court properly compelled arbitration of the claims; therefore, I respectfully dissent.
NOTES
[1] The closing documents were sent back and forth between Key West and Montgomery by fax and by private courier. Mr. and Mrs. Lopez closed the purchase on their house with the help of their attorney, who was also in Key West.
[2] The standard in Warren better promotes our strong public policy against the use of predispute arbitration agreements. Its "contemplation" test is to be applied exclusively in determining whether a contract involves interstate commerce for purposes of applying the FAA to arbitration disputes. Continental Grain Co. v. Beasley, 628 So.2d 319 (Ala.1993).
[3] Although First Real Estate Corp. applied the old "slightest nexus" test in finding insufficient involvement with interstate commerce to require arbitration, its reasoning is certainly applicable to the stricter test required by Ex parte Warren and Ex parte Jones. In First Real Estate Corp., a New York partnership and an Alabama corporation with its principal place of business in New York were found to have insufficient contacts with interstate commerce in a dispute over an Alabama corporation's management of their property within Alabama.