632 So.2d 475 (1994)
Ex parte Thomas A. LORANCE, M.D.
(Re Thomas A. LORANCE, M.D. v. SOUTHERN HEALTH CORPORATION OF HAMILTON, INC., et al.)
1930140.
Supreme Court of Alabama.
February 11, 1994.
*476 Roger L. Bates and I. Ripon Britton, Jr. of Tingle, Sexton, Murvin, Watson & Bates, P.C., Birmingham, for petitioner.
Jeffery A. Mobley of James, Lowe & Mobley, Haleyville, for respondent.
PER CURIAM.
The plaintiff, Thomas A. Lorance, M.D., petitions this Court for a writ of mandamus directing Judge Bobby R. Aderholt of the Marion County Circuit Court to set aside an order compelling arbitration of tort and breach-of-contract claims brought by Lorance against Southern Health Corporation of Hamilton, Inc. ("Southern Health"); Niles V. Floyd, vice president of Southern Health; and Frank Jenkins, M.D.[1] The issue is whether the arbitration clause in the professional services contract entered into by Lorance and Southern Health is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").
Predispute arbitration agreements are unenforceable under Alabama law, § 8-1-41, Alabama Code 1975; Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140 (Ala.1980); however, if an arbitration clause is contained in a contract that involves interstate commerce, then the FAA preempts state law, and the clause is enforceable. Ex parte Alabama Oxygen Co., 433 So.2d 1158, vacated, York Int'l v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984); Terminix Int'l Co. Ltd. Partnership v. Jackson, 628 So.2d 357 (Ala.1993). The FAA makes certain arbitration clauses enforceable:
"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable ..."
9 U.S.C. § 2. "`The FAA applies to a transaction within this state if the contract [1] involves interstate commerce and [2] contains an arbitration clause voluntarily entered into by the parties.'" Lopez v. Home Buyers Warranty Corp., 628 So.2d 361 (Ala.1993) (quoting A.J. Taft Coal Co. v. Randolph, 602 So.2d 395, 397 (Ala.1992)). The test of whether a contract containing an arbitration clause involves interstate commerce is whether the parties to the contract contemplated substantial interstate activity at the time they entered into the contract. Ex parte Jones, 628 So.2d 316 (Ala.1993).
In March 1992, Lorance and Southern Health entered into a "Net Income Guarantee Agreement," under which Lorance agreed to establish a medical practice in Hamilton, Alabama, in exchange for Southern Health's promise to help Lorance establish his practice and to subsidize his net practice income during the term of the contract by paying him $15,000 per month. This contract contained an arbitration clause, which required that all claims or controversies *477 arising out of or relating to the contract be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and that the arbitration be conducted in Atlanta, Georgia.
Southern Health is a Georgia corporation with its corporate offices in Atlanta, Georgia. Southern Health's officers, G. Frank Jenkins, M.D., president; Phillip H. Eastman III, vice president/secretary; Mike Hall, executive vice president; and Susan Jennings negotiated the Net Income Guaranty Agreement from Southern Health's corporate offices in Atlanta, Georgia; Lorance at that time was residing in California. According to the affidavits of Jenkins and Eastman, the final act making the contract enforceable was Eastman's execution of the contract in Atlanta.
In its written order, the circuit court held that Lorance and Southern Health contemplated substantial interstate activity in the performance of the contract, noting that when the contract was negotiated, Lorance was a California resident and Southern Health was a Georgia corporation; that the negotiations took place, and the contract was executed, outside Alabama; that the income guarantee payments to Lorance by Southern Health originated in Atlanta, Georgia; and that Lorance and agents of Southern Health communicated numerous times concerning the establishment of Lorance's practice, e.g., they communicated in regard to marketing, medical equipment, and supplies.
Citing First Real Estate Corp. v. Brown Marx Tower Limited Partnership, 620 So.2d 648 (Ala.1993), Lorance argues that the circuit court erred in compelling arbitration and that, notwithstanding the communications between the parties across state lines during the negotiation of the contract, the purpose or "focus" of the contract was to subsidize and assist Lorance in establishing a medical, surgical practice in Hamilton, Alabama. Therefore, Lorance contends, the activity that the parties contemplated was purely local.
Citing Continental Grain Co. v. Beasley, 628 So.2d 319 (Ala.1993), Southern Health, Jenkins, and Floyd counter, arguing that it is the scope of the contract, not the locus actus place of performancethat determines the applicability of the FAA. Therefore, they say that, because the contract was negotiated while neither party to the contract was a resident of Alabama and because Southern Health's performance under the contract was directed from its corporate offices in Atlanta, Georgia, the contract involved substantial interstate activity.
In First Real Estate Corp., supra, the issue was whether a commercial real estate management agreement involved interstate commerce for purposes of applying the FAA. First Real Estate Corporation of Alabama, Inc., an Alabama corporation, entered into separate management agreements with Brown Marx Tower Limited Partnership (a limited partnership organized under the laws of New York) and Bell Building Group, Inc. (an Alabama corporation with its principal place of business in New York), for the management of the Brown Marx Tower in Birmingham, Alabama, and the Bell Building in Montgomery, Alabama. Under these management agreements, which were negotiated in Alabama, First Real Estate was to manage the Brown Marx Tower and the Bell Building. Brown Marx Tower Limited Partnership and the Bell Building Group brought an action against First Real Estate, alleging fraud, breach of contract, breach of fiduciary duty, gross negligence, and tortious interference with business relations. All of these allegations concerned actions or events that occurred in Alabama and that arose from obligations that were to be performed solely in Alabama. Holding that the management agreements did not involve interstate commerce, the Court stated that the "mere use of the telephone and mail by persons in different states to communicate about activity that is purely local is too slight to constitute such a nexus." 620 So.2d at 649.
Although the contract in this case was not negotiated in Alabama, the holding in First Real Estate Corp. persuades us that the communications between the parties during both the negotiation of the contract and its performance concerned an activity that was purely local, namely, the establishment of a surgical practice in Hamilton, Alabama. We hold, therefore, that these communications do not, *478 by themselves, support an inference that the parties contemplated substantial interstate activity when they entered into the "Net Income Guarantee Agreement." Like the service contracts in First Real Estate Corp., which were entered into by companies either organized or having their principal place of business in another state, for the management of commercial real estate located in Birmingham and Montgomery, Alabama, the professional service agreement in this case was entered into for the purpose of establishing a surgical practice in Hamilton, Alabama. Although the parties to the agreements in First Real Estate Corp. and the parties to the agreement in this case engaged in communications across state lines, the activity toward which their contracts and their efforts were directed was purely local.
Southern Health contends that the parties contemplated substantial interstate activity and that this contention is supported by evidence indicating that Southern Health's agents, working in Atlanta, Georgia, directed that corporation's performance under the contract. We conclude that Continental Grain Co. v. Beasley, supra, does not support Southern Health's argument. Continental Grain Co. involved an arbitration agreement between Continental Grain Company (a poultry products retailer) and a group of Alabama chicken growers. Although the growers' performance under the contract consisted solely of growing chickens in Alabama during the period between hatching and processing, the Court held that the parties had contemplated substantial interstate activity in performing their contractual obligations because they were engaged in the production of poultry, 90 percent of which was to be sold out of state in interstate commerce.
Southern Health relies heavily on this Court's statement in Continental Grain Co. that the place of performance under the contract is not dispositive and that it is the "scope of the contract," and not the locus actus, that determines the applicability of the FAA. The Court in Continental Grain Co. made it clear that although the growers' performance under the contract occurred solely in Alabama, their performance under the contract was but one part of a larger production process that contemplated the ultimate sale of 90 percent of the poultry in interstate commerce. Therefore, the Continental Grain Co. Court concluded, the scope of the contract encompassed substantial interstate activity. In this case, however, although some of Southern Health's performance under the contract was directed by its agents from Atlanta, Georgia, the scope of the Net Income Guarantee Agreement was not so extensive as to include substantial interstate activity. The scope of the contract consisted principally of establishing a medical practice in Hamilton, Alabama, to provide surgical services mainly to Alabamians in Marion County.
Based on the foregoing, we hold that the circuit court erred in compelling arbitration of Lorance's claims against Southern Health under the Net Income Guaranty Agreement. Therefore, the petitioner is entitled to the writ.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
I would deny the writ. Continental Grain Co. v. Beasley, 628 So.2d 319 (Ala.1993).
NOTES
[1] Jenkins is apparently an officer of Southern Health, although the petition does not indicate his title.