I concur in the result only, because the majority, although remanding the cause to the trial court in accordance with the mandate of the Supreme Court of the United States, seems to suggest that there still may be triable issues of fact in this case. I believe that this Court should have simply remanded the case to the trial court, citing the mandate of the United States Supreme Court. Because the opinion of this Court may be read as holding that there may still be triable issues of fact in this case, I write specially to address that question.
In my opinion, the Supreme Court has left little doubt concerning the scope of the application of the Federal Arbitration Act, and little doubt that the language of the words of the Act — "a contract evidencing a transaction involving commerce" — are "broad" and are "indeed the functional equivalent of 'affecting' [commerce]."[11] Allied-BruceTerminix Companies, Inc. v. Dobson, 513 U.S. 265, at ___,115 S.Ct. 834, at 839 (1995).
The majority, although remanding the case, writes:
 "Although the United States Supreme Court has held that the substantive provisions of the Act, §§ 1 and 2, are applicable in state courts as well as federal courts, see Southland Corp. v. Keating, 465 U.S. 1, 12 [104 S.Ct. 852, 859, 79 L.Ed.2d 1] (1984), the Court has stated that it has not held that §§ 3 and 4 are applicable in state courts. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476-77, 109 S.Ct. 1248, 1254 and n. 6, 103 L.Ed.2d 488
(1989); Southland Corp. v. Keating, 465 U.S. at 16 n. 10, 104 S.Ct. at 861 n. 10. While the Act preempts state law that actually conflicts with the federal policy favoring arbitration, it does not prevent enforcement of agreements to arbitrate under state rules of arbitration. Volt Info. Sciences, 489 U.S. at 477-79, 109 S.Ct. at 1254-56
(stating that '[the Act] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration'); cf. Southland Corp., 465 U.S. at 24, 104 S.Ct. at 865 (O'Connor, J., dissenting) (stating that 'the Court reads § 2 to require state courts to enforce § 2 rights using procedures that mimic those specified for federal courts by FAA §§ 3 and 4'). However, § 8-1-41(3), Ala. Code 1975, provides that '[a]n agreement to submit a controversy to arbitration' cannot be specifically enforced; thus, Alabama has not developed rules of arbitration for dealing with pre-dispute agreements independent from the law that has developed in cases in which the Federal Arbitration Act applied. Because the United States Supreme Court has expanded the applicability of the Act to state courts and because our circuit courts will now face more issues concerning arbitration, we look to 9 U.S.C. § 3 and 4, as interpreted herein and to the extent they are applicable and consistent with otherwise-provided procedures applicable in this state, as providing information on how the federal courts would apply the Act."
684 So.2d at 106 (emphasis added; footnote omitted).
By discussing and interpreting §§ 3 and 4 of the Federal Arbitration Act, this Court seems to suggest that the holding by the Supreme Court of the United States in this case still allows this Court to carve out a "statutory niche in which a State remains free to apply its antiarbitration law or policy." 513 U.S. at ___, 115 S.Ct. at 839. Although several Justices of the Supreme Court of the United States believed, as a majority of this Court does, that there is still a "niche" for the application of Alabama's "antiarbitration law or policy," a majority of the Justices of the Supreme Court, I believe, plainly held to the contrary.[12] Consequently, *Page 113 
my concurrence in remanding the case to the trial court, as mandated by the United States Supreme Court, should not be construed as meaning that I agree that there are triable issues of fact left in this case. In summary, I do not believe that the trial court has anything left to do other than grant the stay of proceedings in the underlying case pending arbitration.
I realize that in this case certain Justices of the United States Supreme Court issued strongly worded dissents regarding the scope of the Supreme Court's decision, and the majority of this Court today seems to gain some comfort from those dissenting opinions, because it cites in support of its position some of the same cases cited in those dissenting opinions, but I have never believed that there was a "niche" for the application of a state's antiarbitration policy where a contract involving interstate commerce contains an agreement to arbitrate.
I first set out my view on the scope of the Federal Arbitration Act in a dissenting opinion in Ex parte AlabamaOxygen Co., 433 So.2d 1158, 1168 (Ala. 1983), reversed, YorkInternational v. Alabama Oxygen Co., 465 U.S. 1016,104 S.Ct. 1260, 79 L.Ed.2d 668 (1984), after remand, Ex parte AlabamaOxygen Co., 452 So.2d 860 (Ala. 1984). After the remand of Exparte Alabama Oxygen Co., this Court, in a short opinion, followed the mandate of the Supreme Court of the United States and denied the writ. Even then, one Justice dissented, saying the decision of the Supreme Court of the United States in that case was "an unprecedented act of judicial revisionism." 452 So.2d at 861.
For a short period, this Court followed the reasoning of the Supreme Court of the United States in York International v.Alabama Oxygen Co., which mandated a review in light ofSouthland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852,79 L.Ed.2d 1 (1984), and it adopted the so-called "slightest nexus" test. See Ex parte Costa Head (Atrium), Ltd.,486 So.2d 1272, 1275 (Ala. 1986); Maxus, Inc. v. Sciacca,598 So.2d 1376, 1379 (Ala. 1992); Ex parte Brice Building Co.,607 So.2d 132, 133-34 (Ala. 1992). Later, the Court adopted the so-called "contemplation of substantial interstate activity" test, which was applied on original submission in this case. See Ex parteJones, 628 So.2d 316 (Ala. 1993); Continental Grain Co. v.Beasley, 628 So.2d 319, 321 (Ala. 1993); Lopez v. Home BuyersWarranty Corp., 628 So.2d 361, 363 (Ala. 1993). I filed dissenting opinions in Ex parte Jones and Lopez and concurred in the result in Continental Grain Co.
It seems obvious to me that a majority of this Court, like the Justices of the United States Supreme Court who dissented in this case, believe that the majority of the Justices of the Supreme Court of the United States has misinterpreted the congressional intent behind the Federal Arbitration Act. As I have already pointed out, I have always been of the opinion that the Supreme Court of the United States, in Southland Corp.v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), correctly interpreted the congressional intent; therefore, I concur only with the result, which is to remand the cause to the trial court.
[11] The Supreme Court itself noted that "[t]he parties do not contest that the transaction in this case, in fact, involved interstate commerce. " 513 U.S. 265, at ___, 115 S.Ct. 834, at 843 (1995).
[12] In its opinion in this case, 513 U.S. 265, at ___,115 S.Ct. 834, at 838, the Supreme Court discussed the holdings in PrimaPaint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 405,87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967), as follows:
 "[T]he holding in [Prima Paint] led to a further question. Did Congress intend the Act also to apply in state courts? Did the Federal Arbitration Act pre-empt conflicting state antiarbitration law, or could state courts apply their antiarbitration rules in cases before them, thereby reaching results different from those reached in otherwise similar diversity cases?"
The Court, citing Southland Corp. v. Keating, 465 U.S. 1,15-16, 104 S.Ct. 852, 860-61, 79 L.Ed.2d 1 (1984), said that "the Federal Arbitration Act pre-empts state law; and . . . state courts cannot apply state statutes that invalidate arbitration agreements."