The question of when and under what circumstances a dispute arises out of an agreement that involves interstate commerce and is therefore subject to the provisions of the Federal Arbitration Act ("FAA"), is one that courts have had difficulty resolving. There generally seems to be no "bright line" separating those disputes that arise out of such agreements from those that do not. This case provides no bright line.
The majority, applying what it describes as Alabama's strong public policy against arbitration, concludes that the subject agreement does not come within the terms of the FAA. My opinion of what constitutes a dispute arising out of an agreement involving interstate commerce, and, therefore, coming within the provisions of the FAA, has been stated in other cases. See,Ex parte Alabama Oxygen *Page 1264 Co., 433 So.2d 1158 (Ala. 1983) (Maddox, J., dissenting); this Court's judgment in that case was vacated by the United States Supreme Court and the cause was remanded to this Court, York International v. Alabama Oxygen Co.,465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). See this Court's later opinion in Ex parte Alabama Oxygen Co.,452 So.2d 860 (Ala. 1984) (on remand from the United States Supreme Court), adopting my dissent in the original proceeding (433 So.2d at 1168); and see Ex parte Costa Head(Atrium), Ltd., 486 So.2d 1272 (Ala. 1986), which I joined.
Congress passed the FAA in 1925 out of a desire to overcome the common-law judicial hostility toward arbitration; Congress provided that agreements to arbitrate shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2 (1988). Section 2 of the FAA, overturning the judicial presumption against agreements to arbitrate, applies to any "maritime transaction or . . . transaction involving commerce." In Moses H. ConeMem. Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24,103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the Supreme Court of the United States stated that § 2 of the FAA stands for "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Therefore, I am of the opinion that if the contract involved is one involving interstate commerce and the contract contains an arbitration agreement voluntarily entered into by the parties, federal policy favoring arbitration agreements must be applied, notwithstanding what the majority refers to as "our strong public policy against the use of predispute arbitration agreements." 644 So.2d at 1261.
The Supreme Court of the United States stated in Moses H.Cone Mem. Hospital, 460 U.S. at 24-25, 103 S.Ct. at 941,74 L.Ed.2d at 785, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Therefore, I cannot agree with the majority's interpretation of the language of the arbitration clauses to deny the benefits of the FAA to the party asserting entitlement to them. The Supreme Court has stated: "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior GulfNavigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353,4 L.Ed.2d 1409, 1417 (1960). The language at issue in this case is "any dispute arising out of the Agreement shall be submitted to the decision of a board of arbitration." The trial court narrowly construed this language on the basis of SweetDreams Unlimited, Inc. v. Dial-A-Mattress, Intl, Ltd.,803 F. Supp. 1358 (N.D.Ill. 1992), which was reversed by the Court of Appeals for the Seventh Circuit, 1 F.3d 639 (7th Cir. 1993). The language of the arbitration provision interpreted in SweetDreams was as follows: "Any disputes arising out of the agreement shall be settled and determined by [arbitration]."Sweet Dreams, 1 F.3d at 641. The district court held that the agreement to arbitrate was limited to matters involving contract interpretation or performance when it referred to controversies arising out of the contract. The Seventh Circuit said that "any dispute between contracting parties that is in any way connected with their contract could be said to 'arise out of' their agreement and thus be subject to arbitration under a provision employing this language." 1 F.3d at 642. Based upon this interpretation and the federal presumption in favor of arbitration, the Seventh Circuit concluded that the count alleging fraudulent inducement and the count alleging intentional interference with business relationships were "related to the subject matter of the arbitration clause and subject to arbitration under it."Id. at 643. The provision at issue in this case specifically states that "any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration." Count one of Lanier's complaint basically alleges fraud in the inducement and count three alleges conversion and intentional interference with business relationships. *Page 1265 
Based upon the Seventh Circuit's analysis of the Federal Arbitration Act in Sweet Dreams, which I find very persuasive, I conclude that the disputes in this case are subject to arbitration, because they clearly "arise outof" the agreement between the parties.
I recognize that Alabama does have a strong public policy against arbitration, but I think that the majority's adoption of a standard of interpretation based upon the reasoning set forth in Mediterranean Ent., Inc. v. Ssangyong,708 F.2d 1458 (9th Cir. 1983), which in turn relied upon In reKinoshita Co., 287 F.2d 951 (2d Cir. 1961), both of which denied arbitration, is too narrow in its scope.
The arbitration provision at issue in MediterraneanEnt. stated: "Any disputes arising hereunder . . . shall be settled through binding arbitration. . . ." 708 F.2d at 1461. The clause in Kinoshita required arbitration of "any dispute or difference [that] should arise under [the agreement]." 287 F.2d at 952. In this case, the arbitration provision, like the one in Sweet Dreams, applies to all disputes "arising out of' the agreement. The majority quotes Judge Medina's dicta in Kinoshita that suggest a synonymy between "arising under" and "arising out of." InS.A. Mineracao da Trindade-Samitri v. Utah Int'l,Inc., 745 F.2d 190 (2d Cir. 1984), the Court of Appeals for the Second Circuit reexamined Kinoshita. The Second Circuit concluded correctly, I believe, that Kinoshita
is inconsistent with the federal policy favoring arbitration. 745 F.2d at 193-94. Rather than overrule Kinoshita, the S.A. Mineracao court "confine[d]Kinoshita to its precise facts." 745 F.2d at 194. As the Seventh Circuit in Sweet Dreams points out, "As a matter of 'precise fact,' Kinoshita deals with the effect of 'arising under' language." Sweet Dreams, 1 F.3d at 642. The arbitration clause in this case providing for arbitration of "any dispute arising out of" the contract is not within the "precise facts" of the clause in Kinoshita, providing for arbitration of "any dispute or difference [that] should arise under [the agreement]". The clause in this case is clearly different from and broader than the clause inKinoshita. The clause in this case bears a potentially broader reading than the clause in Mediterranean Ent., which provided for arbitration of "[a]ny disputes arising hereunder" and the clause in Kinoshita, which provided for arbitration of "any dispute or difference [that] should arise under [the agreement]". As the United States Supreme Court has stated, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers ofAmerica v. Warrior Gulf Navigation Co., 363 U.S. 574,582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409, 1417 (1960). I believe that the majority's holding as to the claim alleging conversion and interference with business relationships is inconsistent with the federal policy favoring arbitration; therefore, I must respectfully dissent from that holding.
As to the majority's holding reversing the order of the trial court denying arbitration on the claim alleging fraud in the inducement, I concur in the result.