F.A. Dobbs and Sons, Inc. ("Dobbs"), appeals the order of the trial court denying its motion to dismiss or, in the alternative, to compel arbitration. We conclude that the denial of this motion to dismiss is not reviewable. We affirm the denial of the motion to compel arbitration.
Dr. David Northcutt and Dr. Tracy Northcutt contracted with Dobbs for Dobbs to construct a one-story wood-frame building for use as a professional dental office. The "STANDARD FORM OF AGREEMENT BETWEEN OWNER AND CONTRACTOR ON THE BASIS *Page 608 
OF A STIPULATED PRICE" provides, in pertinent part:
"Article 8. CONTRACT DOCUMENTS
 "The Contract Documents which comprise the entire agreement between the OWNER and CONTRACTOR concerning the Work consist of the following:
"8.1 This Agreement (pages 1 to 5, inclusive)
". . . .
"8.4 Notice of Award.
"8.5 General Conditions (pages 1 to 33, inclusive).
". . . .
 "There are no Contract Documents other than those listed above in this Article 8. The Contract Documents may be only amended, modified or supplemented as provided in paragraphs 3.4 and 3.5 of the General Conditions.
". . . .
 "IN WITNESS WHEREOF, OWNER and CONTRACTOR have signed this Agreement in triplicate. One counterpart each has been delivered to OWNER, CONTRACTOR, and ENGINEER. All portions of the Contract Documents have been signed or identified by OWNER and CONTRACTOR or by ENGINEER on their behalf." (Emphasis added.)
Attached to the agreement are the "NOTICE OF AWARD," "NOTICE TO PROCEED," and "STANDARD GENERAL CONDITIONS OF THE CONSTRUCTION CONTRACT" (emphasis added). Articles 9 and 16 of the general conditions of the construction contract provide, in relevant part:
"Decisions on Disputes:
 "9.11 ENGINEER will be the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder. Claims, disputes and other matters relating to the acceptability of the Work or the interpretation of the requirements of the Contract Documents pertaining to the performance and furnishing of the Work and claims under Articles 11 and 12 in respect of changes in the Contract Price or Contract Time will be referred initially to ENGINEER in writing with a request for formal decision in accordance with this paragraph, which ENGINEER will render in writing within a reasonable time. . . .
 "9.12 When functioning as interpreter and judge under paragraphs 9.10 and 9.11, ENGINEER will not show partiality to OWNER or CONTRACTOR and will not be liable in connection with any interpretation or decision rendered in good faith in such capacity. The rendering of a decision by ENGINEER pursuant to
paragraphs 9.10 and 9.11 with respect to any such claim, dispute or other matter (except any which have been waived by the making or acceptance of final payment as provided in paragraph 14.16) will be a condition precedent to any exercise by OWNER or CONTRACTOR of such rights or remedies as either may otherwise have under the Contract Documents or by Laws or Regulations in respect of any claim, dispute or other matter.
". . . .
"ARTICLE 16-ARBITRATION
 "16.1 All claims, disputes and other matters in question between OWNER and CONTRACTOR arising out of, or relating to the Contract Documents or the breach thereof (except for claims which have been waived by the making or acceptance of final payment as provided by paragraph 14.16) will be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association *Page 609 
 then obtaining subject to the limitations of this Article 16. This agreement so to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this Article 16 will be specifically enforceable under the prevailing law of any court having jurisdiction.
 "16.2 No demand for arbitration of any claim, dispute or other matter that is required to be referred to ENGINEER initially for decision in accordance with paragraph 9.11 will be made until the earlier of (a) the date on which ENGINEER has rendered a decision or (b) the tenth day after the parties have presented their evidence to ENGINEER if a written decision has not been rendered by ENGINEER before that date. . . ." (Emphasis added.)
The Northcutts sued Dobbs for breach of the express warranties in certain paragraphs of the general conditions of the construction contract, for breach of implied warranties, breach of contract, fraud, fraudulent suppression, deceit, and outrage. After Dobbs answered, Dobbs moved to dismiss the action for the Northcutts' "failure . . . to satisfy conditions precedent prior to filing suit" or, in the alternative, to compel arbitration. Attached to the motion to dismiss were a copy of the agreement and its attachments and an affidavit from Wayne Dobbs, the president of Dobbs. Dobbs grounded its motion to dismiss on the Northcutts' failure to comply with paragraph 9.11 of the general conditions of the construction contract, supra, requiring that disputes initially be referred to ENGINEER. Following a hearing, the trial court denied the motion to dismiss or, in the alternative, to compel arbitration.
On appeal, Dobbs contends that the Northcutts' failure to comply with paragraph 9.11 requires dismissal of the Northcutts' action. Rule 12(b), Ala.R.Civ.P., provides, in pertinent part:
 "If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summery judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
Therefore, Dobbs's attaching exhibits to its motion to dismiss effectively converted it to a summary judgment motion. An order denying
summary judgment is not an appealable order (except by Rule 5, Ala.R.App.P., permission, not sought or granted in this case). NationwideProp. Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369 (Ala. 2001); Ex parte Rizk, 791 So.2d 911 (Ala. 2000); Superskate, Inc. v.Nolen, 641 So.2d 231 (Ala. 1994). Therefore, we do not address the merits of the defense of condition precedent asserted by Dobbs.
Dobbs contends also that the trial court erred in denying the motion to compel arbitration. Dobbs argues that, because the Northcutts did not offer "any evidence in opposition to [Wayne Dobbs's affidavit] . . . [the Northcutts] cannot expect to defeat the Defendant's evidence with bald assertions." Relying on Ex parte Costa Head (Atrium), Ltd.,486 So.2d 1272 (Ala. 1986), Dobbs argues that the "agreement reflects a transaction involving interstate commerce," and that "[t]he requirement of the FAA [Federal Arbitration Act] that an arbitration agreement `involve commerce' has been construed very broadly so that the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA." 486 So.2d at 1275. *Page 610 
Since Ex parte Costa Head (Atrium), Ltd., was decided, this Court has more accurately articulated the nexus between the agreement or transaction and interstate commerce that is prerequisite to the applicability of the Federal Arbitration Act. In Southern United FireInsurance Co. v. Knight, 736 So.2d 582, 585-86 (Ala. 1999), this Court held:
 "The Federal Arbitration Act (`FAA'), 9 U.S.C. § 1
et seq., preempts contrary state law (specifically, contrary law based on Ala. Code 1975, § 8-1-41(3) and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that `involves' interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260
(Ala. 1995); Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala. 1995). This Court has held that even an intrastate transaction `involves' interstate commerce if it has a substantial effect on the generation of goods or services for interstate markets and their distribution to the consumer. See Delta Construction Corp. v. Gooden, 714 So.2d 975 (Ala. 1998), citing Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala. 1997)." (Emphasis added.)
In Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 872 (Ala. 1999), we held:
 "This Alabama jurisprudence [Knight, supra] is consistent with United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), a criminal case, which holds:
 "`[O]ur case law has not been clear whether an activity must "affect" or "substantially affect" interstate commerce in order to be within Congress' power to regulate it under the Commerce Clause. . . . We conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity "substantially affects" interstate commerce.' (Emphasis added [in Rogers Foundation Repair].)
"514 U.S. at 559, 115 S.Ct. 1624.
 "No evidence whatsoever tends to prove the physical reality of any involvement of or effect on interstate commerce, much less any substantial effect on interstate commerce or the generation of goods or services therein. Rogers relies entirely on the recitation in the arbitration section of the contract that, `It is acknowledged by Owner and Contractor that the work performed pursuant to this Contract involves or affects interstate commerce.' This recitation does not prove that the acknowledged involvement of or effect on interstate commerce is substantial. Because Rogers drafted the contract, it will be construed strictly against Rogers. Lilley v. Gonzales, 417 So.2d 161
(Ala. 1982), and Jewell v. Jackson Whitsitt Cotton Co., 294 Ala. 112, 313 So.2d 157 (1975).
 "Because the record contains no proof that the contract or transaction in this case involved or affected interstate commerce substantially so as to satisfy the interstate-commerce criterion for the applicability of the Federal Arbitration Act, that Act does not apply to this contract or transaction. Rather, Alabama law, and specifically § 8-1-41(3), Ala. Code 1975, applies to prohibit specific enforcement of `[a]n agreement to submit a controversy to arbitration.' On uncontroverted evidence, the trial court erroneously applied the Federal Arbitration Act, violated § 8-1-41(3), and ordered the specific enforcement of the arbitration section of the contract against the plaintiff-petitioner Daniel Powell." (Some emphasis original; some emphasis added.) *Page 611 
In Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759
(Ala. 2000), we held that evidence that a party purchases materials or equipment for construction in Alabama from a company in Alabama which does business with or receives supplies or equipment from a company outside Alabama does not alone establish that the construction in Alabamasubstantially affects interstates commerce. Additionally, we held that "[b]ecause it is the Sisters who seek to compel arbitration, they have the burden of proving that the transaction in this case affected interstate commerce." Sisters of the Visitation, 775 So.2d at 765. In Exparte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala. 2001), this Court held:
 "[T]he party moving for arbitration has the burden of proving the existence of a contract containing an arbitration clause, in a transaction that substantially affects interstate commerce. . . . If the party moving to compel arbitration fails to make such a showing, the burden of proof does not shift to the opposing party and the motion should be denied." (Emphasis added; citations omitted.)
To the extent that Ex parte Costa Head (Atrium), Ltd., supra, conflicts with Knight, Powell, Sisters of the Visitation, and Ex parteGreenstreet, supra, it is overruled.
The only evidence submitted by Dobbs in its effort to prove that the Northcutts contract substantially affected interstate commerce is the affidavit of Wayne Dobbs stating, in pertinent part:
 "Dobbs is a construction company, hired by clients to build and renovate buildings. Dobbs also makes cabinetry. In doing so, Dobbs uses various materials that are shipped to Dobbs, and its suppliers, from various locations across the United States. In addition, although most of Dobbs's construction work takes place in Alabama, many of the cabinets we construct are shipped outside the state to Florida, Georgia and Mississippi."
The contract at issue is limited to parties residing in Alabama and work performed in Alabama. Although Dobbs may use some materials from vendors outside Alabama for some jobs, Dobbs did not present any evidence that it used materials purchased outside Alabama in the construction of the Northcutts' building. Sisters of the Visitation, supra. Thus, Dobbs failed to show that its contract with the Northcutts substantially affected interstate commerce. The trial court properly denied Dobbs's motion to compel arbitration.
AFFIRMED.
Houston, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., and See, J., concur in the result.