Rel: January 17, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2023-0853
_____

**HD Hyundai Construction Equipment North America, Inc., f/k/a Hyundai Construction Equipment Americas, Inc.; and HD Hyundai Heavy Industries Co., Ltd., f/k/a Hyundai Heavy Industries Co., Ltd.**

**v.**

**Southern Lift Trucks, LLC**

**Appeal from Washington Circuit Court**
**(CV-22-900029)**

COOK, Justice.

This is the third time these parties have appeared before us regarding this dispute. When previously before this Court, Hyundai Construction Equipment Americas, Inc., and Hyundai Heavy Industries Co., Ltd. (collectively referred to as "Hyundai"),[1] appealed the Washington Circuit Court's order denying their motion to compel arbitration of the claims brought against them by Southern Lift Trucks, LLC ("Southern"). See Hyundai Constr. Equip. Americas, Inc. v. Southern Lift Trucks, LLC, 389 So. 3d 1107, 1123 (Ala. 2023).[2]

To summarize a complicated set of facts explained in our earlier opinion, the underlying dispute concerns the relationship between a manufacturer, Hyundai, and its heavy-equipment dealer, Southern. Southern sued Hyundai after Hyundai terminated one of its agreements

---

[1]Hyundai Construction Equipment North Americas, Inc., is now known as HD Hyundai Construction Equipment North America, Inc. Hyundai Heavy Industries Co., Ltd., is now known as HD Hyundai Heavy Industries Co., Ltd.

[2]That first appeal also concerned two preliminary injunctions that are not material to this appeal. The second time this matter was before us, we reviewed the trial court's order finding Hyundai in contempt for allegedly violating a preliminary injunction. We reversed the order on procedural grounds, and that decision is also not material to this appeal. See Hyundai Constr. Equip. Americas, Inc. v. Southern Lift Trucks, LLC, 392 So. 3d 716 (Ala. 2023).

2

with Southern and appointed another dealer in Southern's sales territory.

In our first opinion, we held that all of Southern's claims against Hyundai should be sent to arbitration except for "any portions of Southern's declaratory-judgment claim relating to the 'enforceability of any provision' of the dealer agreements." Id. at 1120. Thus, we affirmed the trial court's order in part, reversed it in part, and remanded the cause for the trial court to enter an order compelling arbitration of those other claims.

In accordance with our first opinion, the trial court entered an order granting Hyundai's motion to compel arbitration as to all of Southern's claims except for the portion of the declaratory-judgment claim relating to the agreements' enforceability.

Southern, however, took no action to begin arbitration. Approximately four months after the entry of the trial court's order compelling arbitration, Hyundai initiated arbitrations concerning its claims against Southern, chiefly concerning counterclaims Hyundai had asserted against Southern in the trial court, as well as additional claims regarding certain Mississippi territories.

Rather than commencing its own arbitration or pleading its claims as counterclaims in Hyundai's arbitrations, Southern filed a "motion to enjoin or stay [the] arbitration proceedings filed by [Hyundai]." The trial court granted Southern's motion to stop the arbitrations and entered an order temporarily enjoining the parties from proceeding with arbitration pending the resolution of Southern's declaratory-judgment claim before the trial court.

Hyundai now appeals that order to this Court. For the reasons explained below, we reverse.

<u>Facts and Procedural History</u>

Southern and Hyundai's relationship dates back to 2019, when Hyundai entered into an agreement with Southern to become an authorized dealer of lift trucks manufactured by Hyundai Construction. The next year, in 2020, Southern entered into a second agreement with Hyundai to serve as an authorized dealer of construction equipment manufactured by Hyundai Construction. In both agreements, Southern agreed to arbitrate "[a]ll" disputes relating to or arising out of the agreement.

In May 2022, Southern sued Hyundai in the trial court, alleging that Hyundai had wrongfully terminated one of the parties' agreements and asserting various tort claims, a breach-of-contract claim, claims under the Alabama Heavy Equipment Dealer Act ("AHEDA"), § 8-21B-1 et seq., Ala. Code 1975, and claims seeking declaratory and injunctive relief.

Hyundai subsequently moved to compel arbitration of Southern's claims. The trial court, however, denied Hyundai's motion. Hyundai appealed the trial court's order denying its motion to compel arbitration to this Court. As previously discussed, on May 12, 2023, we reversed the trial court's order insofar as it denied Hyundai's motion to compel arbitration as to Southern's breach-of-contract, AHEDA, and tort claims. See Hyundai Constr. Equip. Americas, Inc., 389 So. 3d at 1120. We, however, affirmed the trial court's order insofar as it denied Hyundai's motion to compel arbitration as to any provisions of Southern's declaratory-judgment claim relating to the "enforceability of any provision" of the agreements. Id.

In October 2023, Hyundai commenced two separate arbitrations. First, Hyundai initiated an arbitration with the American Arbitration

Association ("AAA"), asserting claims against Southern related to Southern's performance as a Hyundai dealer in Mississippi. Next, Hyundai initiated a separate arbitration with the AAA, asserting claims against Southern related to Southern's performance as a Hyundai dealer in Alabama. Those claims were essentially the same as the counterclaims asserted by Hyundai in the underlying suit.

On October 26, 2023, Southern filed a motion in the trial court to enjoin or stay the arbitrations initiated by Hyundai. Southern argued that, to resolve the claims asserted by Hyundai in the arbitrations, the arbitrators would need to determine issues pertaining to the enforceability of some provisions of the agreements. According to Southern, however, those issues "must be decided" by the trial court. Southern's brief at 10. Thus, Southern argued, the trial court was required to "enjoin or stay the arbitration proceedings and prohibit Hyundai from moving forward with those proceedings …."

Following a hearing, the trial court granted Southern's motion to enjoin or stay the arbitrations. The trial court's order states, in pertinent part:

> "The arbitration proceedings filed by [Hyundai] are
> hereby temporarily stayed (and the parties are temporarily

6

enjoined from proceeding with arbitration) pending a determination by this Court as to the threshold issues that are not subject to arbitration."

(Emphasis added.) On November 17, 2023, Hyundai appealed the trial court's order to this Court.

## Discussion

On appeal, Hyundai argues that there was no legal basis for the trial court's order enjoining the parties from proceeding with arbitration. According to Hyundai, "the [Federal Arbitration Act] requires arbitration of all claims except for portions of Southern's declaratory[-]judgment claim," and, thus, "the trial court lacked discretion to stay or enjoin the arbitration proceedings filed by Hyundai …." Hyundai's brief at 24.  As noted, Southern argues in response that the enforceability of some provisions of the agreements between the parties is a "threshold" issue that the trial court must decide first. Southern's brief at 30.

### I. The Text of the Arbitration Provision

We agree with Hyundai. To begin with, the text of the arbitration provision does not support Southern's argument. As this Court has repeatedly affirmed, "[w]hether an arbitration agreement applies to a dispute between the parties is to be determined by the language of the

7

contract entered into by the parties." <u>Koullas v. Ramsey</u>, 683 So. 2d 415, 417 (Ala. 1996). The arbitration provision (in both agreements) provides, in pertinent part:

> "[T]he parties agree to resolve their disputes pursuant to the terms set forth in this [section]. <u>All</u> disputes between the parties relating to or arising out of this Agreement or the making, performance or breach thereof, or the subject matter hereof, <u>shall be resolved by arbitration</u> in the following manner:
>
>> "(a) The arbitration shall be conducted in accordance with the American Arbitration Association arbitration rules as in force on the date this agreement is executed. <u>The parties hereby submit to the exclusive personal jurisdiction of such arbitrators for all matters</u> unless such matters are required by law to be submitted to a court or other venue; provided that either party <u>may</u> apply to any court of competent jurisdiction to seek an order compelling arbitration or a declaratory judgment with respect to the enforceability of any provision of this Agreement."

(Emphasis added.)

The plain text of the arbitration provision mandates that "[a]ll" disputes between the parties to the agreements "relating to or arising out of [those agreements] or the making, performance or breach thereof, or the subject matter hereof, <u>shall be resolved by arbitration</u> ...." (Emphasis added.) The provision, however, also contains a limited exception to this

8

arbitration requirement. That exception provides that either party "may apply" for "a declaratory judgment with respect to the enforceability of any provision of th[e] [a]greement" in court.

Crucially, the arbitration provision does not state that disputes over the enforceability of the agreements' provisions are within the exclusive jurisdiction of a court. Likewise, the arbitration provision does not provide that, if the enforceability of some provisions of the agreement is a defense to a claim in arbitration, then the defense must be determined only by a court. Nor does the arbitration provision say that such an issue (whether a defense or not) "must be decided" by a court first. Southern's brief at 10.

Rather, the arbitration provision requires the parties to "submit to the exclusive personal jurisdiction of such arbitrators for <u>all matters</u>," but it gives either party the <u>option</u> of seeking <u>declaratory relief</u> regarding the agreements' enforceability in a court of law.

Thus, although the exception language preserves the parties' right to bring a declaratory-judgment claim pertaining to the agreements' enforceability in court, it does not prevent the arbitrators from adjudicating disputes over the agreements' enforceability. In other

9

words, the permissive-exception language merely allows a party to seek a declaratory judgment. It is not a limitation on the arbitrators' otherwise comprehensive jurisdiction.

Assuming, without deciding, that Hyundai's claims against Southern do require it to prove the enforceability of certain provisions of the agreements,[3] those claims are nevertheless within the scope of the arbitration provision and the arbitrators may therefore exercise jurisdiction over such claims. The pendency of the declaratory-judgment

---

[3]There also remains the question of whether the claims brought by Hyundai in arbitration actually depend upon this alleged threshold issue. On its face, it would appear that arguments against the enforceability of some of the provisions of the agreements would be a <u>defense</u> raised by Southern, rather than an <u>element of a claim</u> that must be proven by Hyundai. Thus, it would not appear that the potential applicability of a defense is a "threshold" issue that must be addressed first.

Moreover, in its brief, Southern does not specify how Hyundai's claims in arbitration would hinge on the trial court's determination of any enforceability issues or what exactly those enforceability issues are and to which provisions they relate. Southern appears to concede that it is challenging the enforceability of only some of the provisions of the agreements. For instance, because our Court has already determined that the arbitration provision within the agreements is enforceable, it appears clear that Southern could not (and is not) challenging the enforceability of the agreements in their entirety. Given the clarity of the text of the arbitration provision, we need not decide these questions.

action in the trial court, thus, does not prevent the parties from proceeding with arbitration of the arbitrable claims.

## II. The Possibility of Inconsistent Results Is Not Justification For Enjoining An Arbitration

Southern insists, however, that the injunction (and stay) is necessary to protect the jurisdiction of the trial court, to prevent inconsistent results, and to promote judicial economy. It is again mistaken. The only cases that Southern cites for this proposition are cases in which a judgment had already been entered. See Southern's brief at 17 (citing Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 821 So. 2d 158 (Ala. 2001)). For instance, in Leon C. Baker, P.C., this Court expressly recognized that that case "involve[d] the preclusive effect of a prior judicial determination on claims asserted in a subsequent arbitration proceeding." 821 So. 2d at 163 (emphasis added); see also In re Y & A Grp. Sec. Litig., 38 F.3d 380, 382 (8th Cir. 1994) (holding that court properly granted motion to enjoin arbitration because courts have the power to affect validity of their own judgments and "the court proceedings were completed first, resulting in a final judgment").

Moreover, Southern does not cite a single case holding that it is appropriate for a court to stay or enjoin an arbitration because of the

11

necessity of making threshold determinations related to a nonarbitrable claim.

In fact, our Court has recognized the opposite to be true. For example, in Ex parte Costa & Head (Atrium), Ltd., 486 So. 2d 1272 (Ala. 1986),[4] our Court expressly rejected this argument, explaining: "[T]he trial court has no discretion to stay arbitration on the grounds of judicial economy, possible inconsistent results, or the existence of non-arbitrable claims." Id. at 1276. Further, our Court wrote that "state courts are obligated to grant says of litigation under section 3 of the [Federal Arbitration Act] just as are federal courts." Id. Our Court has likewise noted that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "'requires piecemeal resolution when necessary to give effect to an arbitration agreement.'" Terminix Int'l Co. v. Jackson, 669 So.2d 893, 897 (Ala. 1995) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 20 (1983)).

---

[4]The decision in Ex parte Costa & Head was overruled on other grounds by Ex parte Jones, 628 So. 2d 316 (Ala. 1993), and F.A. Dobbs & Sons, Inc. v. Northcutt, 819 So. 2d 607 (Ala. 2001); thus, the decision's discussion of jurisdiction and stays remains good law. Further, Southern does not argue that the relevant holding of Ex parte Costa & Head has been overruled or that its reasoning is illogical.

Ex parte Costa & Head, moreover, cited and relied upon Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985), which stated that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." (Emphasis added.) Justice White's concurrence was even more specific, stating that district courts "should not stay arbitrations … for fear of its preclusive effect," and that doing otherwise would "significantly disappoint[] the expectations of the parties and frustrate[] the clear purpose of their agreement." Byrd, 470 U.S. at 225 (White, J., concurring).

### III. Our Court Did Not Rule That The Declaratory-Judgment Claim Must Be Resolved First

Finally, Southern argues that our Court has somehow already decided that the declaratory-judgment claim must go forward in court first: "As this Court held, those issues are for the trial court's determination," Southern's brief at 30, and the "implication of this Court's May 12, 2023 decision is that the threshold issues regarding the enforceability of the provisions of the Dealer Agreements should be decided first by the trial court." Id. at 31 (emphasis omitted).

13

We said nothing of the kind, and Southern cites no language in our first opinion that supports such a conclusion. We ordered arbitration. Southern failed to initiate an arbitration. In fact, not only did Southern fail to initiate an arbitration, it moved to prevent the arbitrations initiated by Hyundai from moving forward. Those actions are inconsistent with the purpose of arbitration, which is to enable a faster and more efficient dispute-resolution process. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) ("The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute.").

For these reasons, the trial court erred in enjoining arbitration of Hyundai's claims against Southern.[5]

### Conclusion

Based on the foregoing, we reverse the trial court's order enjoining the parties and staying the arbitrations, and we remand the cause for the trial court to enter an order consistent with this opinion.

---

[5]We do not reach the issue of whether an Alabama court would ever have jurisdiction, under any circumstances, to enjoin the AAA or any other arbitration forum from acting (or otherwise to issue an order to "stay" an arbitration).

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Wise, Bryan, and Mitchell, JJ., concur.

Sellers, Mendheim, and Stewart, JJ., concur in the result.